```
            UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF MISSISSIPPI
                   JACKSON DIVISION
```

WILLMER NEWMAN                                      PLAINTIFF

VS.                            CIVIL ACTION NO. 3:10CV514TSL–MTP

SANDERSON FARMS, INC.                               DEFENDANT

## MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendant Sanderson Farms, Inc. for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Plaintiff Willmer Newman has responded to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion should be granted.

On January 13, 2006, Newman, an eight-year employee of Sanderson Farms, was promoted to the position of Hatchery Superintendent.[1]  On February 24, 2009, defendant terminated plaintiff's employment on the ostensible basis of poor work performance.  Newman was replaced by an individual in his twenties.  Following his termination, plaintiff filed a charge of discrimination, claiming he was terminated because of his age, and he subsequently filed the present action under the Age

---

[1] This was Newman's second stint with Sanderson Farms, having been employed as Specialty Department Supervisor from January 1994 to February 1997.

Discrimination in Employment Act (ADEA), 29 U.S.C. § 623.[2]  See 29 U.S.C. § 623 ("It shall be unlawful for an employer (1) to fail or refuse to hire or to discharge an individual or to otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.").  Sanderson Farms denies that plaintiff was terminated because of his age, and maintains that it terminated plaintiff due to numerous instances of poor job performance.  It seeks summary judgment contending that plaintiff cannot demonstrate pretext in the face of its legitimate non-discriminatory reasons for his termination.

The evidence offered in support of Sanderson Farms' motion shows that as part of its business of producing and distributing chicken products throughout the United States, Sanderson Farms purchases eggs from breeder flocks, which are then cared for and incubated at one of Sanderson Farms' hatcheries until the eggs hatch into broiler chicks.  As a hatchery superintendent, Newman oversaw all aspects of the hatchery from the time the eggs reached the facility until they hatched and were shipped to the farms of contract broiler growers.  These responsibilities included receipt of the eggs from farmers, storage of the eggs in the egg room at a

---

[2]     Plaintiff also charged that his termination violated the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq. In response to the motion for summary judgment, plaintiff concedes this claim.

2

cool temperature for a period of days and transfer of the eggs from egg room to the incubator.  Each step of the process required specific conditions to ensure maximum production of chicks and Newman, as superintendent, was responsible for ensuring these conditions were met.  Newman directly supervised the Egg Room and Chick Room Supervisors, two egg truck drivers and two maintenance men.  In turn, he reported to the Breeder Hatchery Manager.

While acting as superintendent, Newman received four written reprimands with the fourth and final reprimand resulting in his termination.  In January 2006, he was cited for numerous problems, relating to equipment, housekeeping and personnel.  Again in 2008, Newman received a written warning of poor work performance.  Specifically, he was disciplined for improperly recommending that the Egg Room Supervisor receive a reprimand and for failing to timely complete and turn in safety reports.  Both of these reprimands came with a warning that continued poor performance could result in additional disciplinary action, including termination.

On January 26, 2009, Newman's supervisor Ken Stair issued a memorandum addressing three performance issues.  First, Newman was cited for instructing the Egg Room Supervisor to transfer eggs to the hatcher before it had reached the requisite temperature, resulting in a poor hatch rate.  Secondly, Newman was counseled regarding poor housekeeping in the hatchery while he was vacation.

3

Finally, Newman was faulted for failing to properly record the entrance and exit temperatures in the incubators on a consistent basis. During a discussion with Newman of the issues set forth in the memorandum, Stair and Ken Holmes, the top human resources official at the facility, advised that further poor work performance could result in additional discipline, up to and including termination.

According to defendant, despite Newman's recent reprimands, his performance problems continued, such that by February 24, 2009, his termination was warranted. Specifically, in the final reprimand, Sanderson Farms cited Newman for his failure to: (1) properly monitor members of the Embrex Crew, who failed to follow the proper procedure for transferring eggs to the incubator; (2) follow the necessary steps to ensure that a part-time worker's paperwork had been completed; (3) recognize and correct a significant safety violation, i.e., storing combustibles in the electrical room; and (4) properly monitor the Egg Setters, who had mixed together eggs from different farms, thereby potentially impeding Sanderson Farms' ability to pay a farm according to how well its eggs produced. According to defendant, these infractions, together with those summarized in the January 26, 2009 memorandum, warranted Newman's termination. Defendant denies that Newman's age was a factor in his termination.

4

A plaintiff can prove a claim of intentional discrimination by either direct or circumstantial evidence. Where, as here, the plaintiff lacks direct evidence of discriminatory intent, the plaintiff's proof by way of circumstantial evidence is evaluated under the McDonnell Douglas framework: "First, the plaintiff must establish a prima facie case of discrimination." Russell v. McKinney Hosp. Venture, 235 F.3d 219, 222 (5th Cir. 2000) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142, 120 S. Ct. 2097, 2106, 147 L. Ed.2d 105 (2000)); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)). Second, the employer must articulate a legitimate, nondiscriminatory reason for its decision. Russell, 235 F.3d at 222 (citing McDonnell Douglas, 411 U.S. at 802, 93 S. Ct. at 1817). Third, if the employer carries its burden, the "mandatory inference of discrimination" created by the plaintiff's prima facie case "drops out of the picture" and the fact finder must "decide the ultimate question: whether [the] plaintiff has proven [intentional discrimination]." Id. (citing Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 255 n.10, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981), and St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511-12, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)).

As the Fifth Circuit observed in Laxton v. Gap, 333 F.3d 572, 578 (5th Cir. 2003):

5

> To carry this burden, the plaintiff must produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination. See Reeves [v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142, 120 S. Ct. 2097, 2106, 147 L. Ed. 2d 105 (2000))]. The plaintiff must rebut each nondiscriminatory reason articulated by the employer. Wallace [v. Methodist Hospital System, 271 F.3d 212, 220 (5th Cir. 2001)]. A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or "unworthy of credence." Id.; Reeves, 530 U.S. at 143, 120 S. Ct. at 2106. An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action. See Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 899 (5th Cir. 2002). Evidence demonstrating that the employer's explanation is false or unworthy of credence, taken together with the plaintiff's prima facie case, is likely to support an inference of discrimination even without further evidence of defendant's true motive. Id. at 897; Russell [v. McKinney Hosp. Venture, 235 F.3d 219, 223 (5th Cir. 2000)].

In examining pretext, the question is "not whether [Sanderson Farms'] proffered reason was an incorrect reason for [his] discharge." Laxton, 333 F.3d at 579. Rather, the court's inquiry is "'whether [Sanderson Farms'] perception of [Newman's] performance, accurate or not, was the real reason for [his] termination.'" Evans v. City of Houston, 246 F.3d 344, 355 (5th Cir. 2001) (quoting Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 408-09 (5th Cir. 1999)).

Since Sanderson Farms offers no challenge to plaintiff's prima facie case[3] and has presented a legitimate, non-

---

[3] To establish a prima facie case of age discrimination, a plaintiff must show that "(1) he was a member of a protected

discriminatory reason for Newman's termination, see LeMaire v. Louisiana Dept. of Transp., 480 F.3d 383, 391 (5th Cir. 2007) ("Job performance is a legitimate, non-retaliatory reason for termination."), then to survive summary judgment, plaintiff must present sufficient evidence to create a jury issue on pretext.  In response to the motion, by affidavit, Newman offers his explanation of the circumstances surrounding the first three incidents cited by Sanderson Farms in the fourth and final reprimand.  Specifically, he maintains that upon learning on February 17, 2009 that employees were improperly transferring eggs, he gave them an immediate verbal reprimand and reported the same to Stair, who at the time did not react as if the matter was a cause for concern.  Regarding the failure to complete paperwork on the part-time employee, Newman states that he did not realize that the individual at issue had recently been terminated such that it was necessary to complete new paperwork.  Finally, as to the safety violation, Newman states that the safety inspector twice directed him to keep the specified combustible products in the electrical room until she could determine whether their

---

class-those persons over the age of forty; (2) he was qualified for the position that he held; (3) he suffered an adverse employment action; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." Berquist v. Washington Mut. Bank, 500 F.3d 344, 349 (5th Cir. 2007) (citing Rachid v. Jack In The Box, Inc., 376 F.3d 305, 309 (5th Cir. 2004)).

7

presence created a safety violation, and the second time she gave this direction, Stair and Holmes were present. According to Newman, the fact that he was written up on these grounds demonstrates that Stair was actively looking for any reason to write him up so that Stair could fire him and replace him with a younger worker.

In the court's opinion, even assuming that plaintiff has presented facts to rebut three of the reasons articulated for his termination,[4] plaintiff cannot survive summary judgment where he has failed to put forward any evidence rebutting either the charge that the Egg Setters under Newman's supervision had not properly set the eggs or any of the performance issues raised in the

---

[4] With regard to Newman's attempt to rebut to the first two performance issues raised in the February 24, 2009 Memorandum--failure to properly monitor performance of the Embrex Crew and failure to ensure that a part-time employees' paper work had been completed, Sanderson Farms takes the position, and correctly so, that his explanation of the events do not in any way refute the decisionmaker's good faith belief that he should have prevented the transfer infraction or that he should have been aware that the part-time employee had been discharged and thus needed to complete new paperwork before he could work on the floor. That is to say, plaintiff's challenge on these issues amounts to an argument that Sanderson Farms' perception of his performance was inaccurate. Laxton, 333 F.3d at 579.

On the other hand, however, Newman's statement that, in Holmes' and Stair's presence, the safety inspector told him to keep the disputed materials in the electrical room until she determined whether it amounted to a violation, is in direct contradiction to the affidavits of Holmes, Stair and the safety inspector. If the fact-finder credited Newman on this point and discredited the other witnesses, then this explanation for his termination would be unworthy of credence.

8

January 26, 2009 memorandum. Laxton, 333 F.3d at 578 ("The plaintiff must rebut each nondiscriminatory reason articulated by the employer.") (citing Wallace, 271 F.3d at 220 (holding that, while the plaintiff succeeded in demonstrating a genuine issue of fact concerning the pretext of one of her employer's reasons for terminating her employment, she failed to meet her burden of "presenting evidence rebutting each of the legitimate nondiscriminatory reasons" put forward by the employer and, hence, judgment as a matter of law was appropriate)); Harris v. Mississippi Transp. Comm'n, 329 Fed. Appx 550, 556 (5th Cir. 2009) (holding that plaintiff who failed to rebut each legitimate, nondiscriminatory reason for his termination did not sustain burden of demonstrating pretext). Plaintiff's affidavit makes no mention of the charge that he failed to properly monitor the Egg Setters, nor has he pointed to any other evidence in the record tending to show that this reason is false or unworthy of credence. Likewise, plaintiff does not purport to rebut any of the performance issues set forth in the January 26, 2009 memorandum. Accordingly, the court concludes that plaintiff has failed to create a genuine issue of material fact on the issue of pretext and that Sanderson Farms' motion for summary judgment should therefore be granted.

Accordingly, it is ordered that Sanderson Farms' motion for summary judgment is granted.

9

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this 10th day of November, 2011.

                                         /s/Tom S. Lee
                                         UNITED STATES DISTRICT JUDGE